UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| CARLOS ORTIZ DE JESUS and NOEMI FIGUEROA SULIVERES, on their own behalf and in representation of her minor daughter NOF; THE ESTATE OF KOF, constituted by her parents Carlos Ortiz De Jesús and Noemi Figueroa Suliveres | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | 3:17-cv-02349-JAW |
| ANDRES REYES BURGOS, INC., and its insurance company MAPFRE PRAICO INSURANCE; RAFAEL PÉREZ ESTRELLA; PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY; DEL VALLE GROUP | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER ON MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY**

The defendants in this negligent design case jointly move in limine to exclude the plaintiffs' expert witness primarily on the ground that the factual foundation for his expert opinions is inadequate. The Court denies the motion because the expert's opinions have special relevance to crucial factual and legal issues and would likely assist the trier of fact to understand facts in issue. The Court rejects the defendants' claims that the expert does not have an adequate foundation for his opinions and concludes that the traditional tools of vigorous cross-examination, the presentation of contrary evidence, and careful instruction on the burden of proof at trial are preferable to exclusion.

## I.   BACKGROUND

### A.   Procedural Background

On December 7, 2017, Carlos Ortiz de Jesús and Noemi Figueroa Suliveres (Plaintiffs) acting on their own behalf, as representatives of their surviving minor daughter, and as representatives of the Estate of KOF, their late minor daughter, filed a complaint in this Court against Andrés Reyes Burgos, Inc., its insurance company, Mapfre Praico Insurance, and Rafael Pérez Estrella. *Compl.* (ECF No. 1). On February 9, 2018, the Plaintiffs filed an amended complaint, impleading the Puerto Rico Highway Authority (PRHTA)[1] and Del Valle Group (Del Valle) as Defendants. *Am. Compl.* (ECF No. 17). On April 10, 2018, Del Valle filed an answer to the Amended Complaint. *Answer to Am. Compl.* (ECF No. 38). On April 30, 2018, PRHTA filed an answer to the Amended Complaint. *Answer to the Am. Compl.* (ECF No. 39). On May 21, 2018, the Plaintiffs filed a Second Amended Complaint to make a technical change in the parties; the Second Amended Complaint is the operative complaint. *Second Am. Compl.* (ECF No. 46).

On March 10, 2020, the Plaintiffs filed a joint motion for voluntary dismissal, dismissing Andrés Reyes Burgos, Inc., Mapfre Praico Insurance, and Rafael Pérez Estrella as Defendants. *Jt. Mot. for Partial Voluntary Dismissal* (ECF No. 73). On

---

[1]   In their Amended Complaint, the Plaintiffs allege that the name of this Defendant is Puerto Rico Highway Authority. *Am. Compl.* ¶ 5 (ECF No. 17). In its answer to the Amended Complaint, this Defendant admitted this allegation in its response to paragraph five. *Answer to the Am. Compl.* ¶ 5 (ECF No. 39). But this Defendant refers to itself by the initials PRHTA, elsewhere described as the Puerto Rico Highway and Transportation Authority. *Id.* On the assumption that the Puerto Rico Highway and Transportation Authority knows its own name, the Court sua sponte ORDERS the Amended Complaint further amended to change the name of this Defendant from Puerto Rico Highway Authority to Puerto Rico Highway and Transportation Authority.

April 23, 2020, the same parties moved for voluntary dismissal, *Mot. Requesting the Court to Grant Jt. Mot. for Partial Voluntary Dismissal (Docket #73)* (ECF No. 80), which the Court granted that same day. *Order on Mot. for Partial Voluntary Dismissal* (ECF No. 81). PRHTA and Del Valle were not part of the agreement. The case is trial-ready and had been scheduled for trial from June 15 to June 30, 2020, but the Court continued the trial due to the global pandemic. *Order* (ECF Nos. 71, 85).

On May 13, 2020, in anticipation of the June 2020 trial, PRHTA  filed a motion in limine to exclude Plaintiffs' expert witness, Dr. Farhad Booeshaghi. *Defs.' Mot. in Lim. to Exclude Test. of Pls.' Expert Dr. Farhad Booeshaghi* (ECF No. 86) (*Defs.' Mot.*). On May 18, 2020, Del Valle moved to join PRHTA's motion in limine in full, adopting by reference the contents of the motion as if filed by Del Valle. *Mot. to Join Mot. in Lim. to Exclude Test. of Pls.' Expert Dr. Farhad Booeshaghi* (ECF No. 87). The Court granted Del Valle's motion to join on June 23, 2020. *Order Granting Mot. to Join Mot. in Lim.* (ECF No. 102). On June 17, 2020, Plaintiffs responded, objecting to PRHTA's motion, *Mot. in Opp'n to Mot. in Lim. to Exclude Test. of Pls.' Expert Dr. Farhad Booeshaghi (Docket #86)* (ECF No. 98) (*Pls.' Opp'n*), and on July 10, 2020 supplemented their response. *Suppl. Mot. in Opp'n to Mot. in Lim. to Exclude Test. of Pls.' Expert Dr. Farhad Booeshaghi (Docket #86)* (ECF No. 107) (*Pls.' Suppl. Opp'n*). On August 6, 2020, PRHTA and Del Valle filed a joint reply. *Jt. Reply to Pls.' "Mot. in Opp'n to Mot. in Lim. to Exclude Test. of Dr. Farhad Booeshaghi" (Docket #98) and to "Suppl. Mot. in Opp'n . . ." (Docket #107)* (ECF No. 111) (*Defs.' Reply*).

### B.     Factual Overview

#### 1.     Plaintiffs' Allegations

The Plaintiffs' action arises out of an automobile accident that took place on June 23, 2017 on a highway in Puerto Rico. *Second Am. Compl.* at ¶¶ 9-12 . Plaintiffs allege Ms. Figueroa Suliveres was driving with her two daughters from Cayey to Caguas, Puerto Rico, when she pulled over and parked on the shoulder lane of the highway for a few minutes. *Id.* That area of the highway was within a construction zone at the time of the accident and so two of the three regular traffic lanes were closed due to the construction. *Id.* at ¶¶ 24-25. Unknown to Ms. Figueroa Suliveres, the shoulder lane was allegedly converted into a travel lane. *Id.* at ¶¶ 25-26. While parked, Ms. Figueroa Suliveres' vehicle was rear-ended by a garbage truck, resulting in injuries to Ms. Figueroa Suliveres and to one of her daughters, and the death of her other daughter. *Id.* at ¶¶ 13-17.

The Plaintiffs brought suit in the United States District Court for the District of Puerto Rico alleging negligence by the truck driver, the truck driver's employer, and the employer's insurance company. *Compl.* In their Amended Complaint, the Plaintiffs also sued PRHTA, the owner of the highway, inspector of the construction project, and designer of the Maintenance of Traffic (MOT)—the plan for directing traffic in the construction site—and Del Valle, the general contractor of the construction project. *Second Am. Compl.* at ¶¶ 5-6.

The Plaintiffs' claims against PRHTA and Del Valle are grounded in four factual allegations concerning the MOT. First, Plaintiffs allege PRHTA's MOT "failed

4

to properly notify drivers through signs and markings that the shoulder lane had been converted to a regular lane and vehicles could not park on it." *Id.* at ¶ 27. Second, Plaintiffs contend PRHTA "failed to properly inspect the project to make sure that the MOT was properly implemented." *Id.* at ¶ 28. Third, Plaintiffs allege that Del Valle was "in charge of implementing the MOT as well as making sure that once the MOT was implemented it was working as intended," but Del Valle "failed to do that and as a result they were negligent." *Id.* at ¶ 29. Fourth, Plaintiffs allege that had PRHTA and Del Valle not been negligent, Ms. Figueroa Suliveres would not have parked in the shoulder lane and the accident would not have occurred. *Id.* at ¶¶ 29-30. Plaintiffs brought this suit seeking $14,000,000.00 in damages for physical and emotional harm suffered by Ms. Figueroa Suliveres, her two daughters, and her husband. *Id.* at ¶¶ 32-36.

## 2. Dr. Farhad Booeshaghi: Plaintiffs' Expert

In support of their claims, on May 2, 2018, Plaintiffs stated that they were retaining Dr. Booeshaghi as an "[e]xpert in accident reconstruction and if applicable in traffic safety engineering on highways under construction." *Jt. Initial Scheduling Mem. (Docket # 18)* (ECF No. 40) at 41. Since 2007, Dr. Booeshaghi has been a consulting engineer with Global Engineering Scientific Solutions (GESS), working in the field of forensic engineering.[2] *Booeshaghi Dep.* at 10. At GESS, Dr. Booeshaghi

---

[2] It appears that Dr. Booeshaghi's curriculum vitae was marked as Exhibit 1 in his October 21, 2019 deposition, *Defs.' Mot.*, Attach. 3, *Dep. of Farhad Booeshaghi* (*Booeshaghi Dep.*) at 3, 11. However, Dr. Booeshaghi's curriculum vitae has not been filed as an attachment to any motion submitted to the Court.

has participated in a variety of disciplines, including accident reconstruction, construction, product liability, and premises liability.  *Id.*

Dr. Booeshaghi prepared a report for this case on July 26, 2019.  *Defs.' Mot.*, Attach. 1, *Carlos Ortiz & Noemi Figueroa v. Andres Reyes Burgos Co – Report of Findings* (*Booeshaghi Report*).  In his report, Dr. Booeshaghi opined, among other things, that Del Valle failed to install and maintain the MOT properly and PRHTA failed to recognize the deficiencies of the MOT.  *Id.* at 51-55.  He concluded that because of the improper MOT, Ms. Figueroa Suliveres was not aware that the area where she stopped was a designated lane of travel and but for the improper MOT, she would not have mistaken the shoulder lane as a non-travel lane and would not have stopped her car there.  *Id.*

## II.   The Parties' Positions

### A.   Defendants' Motion

Defendants rely on Federal Rule of Evidence 702 and the series of judicial decisions commencing with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to argue that the testimony of Dr. Booeshaghi should be excluded because his expert testimony is 1) unreliable and 2) irrelevant and unfairly prejudicial.[3]  *Defs.' Mot.* at 4-9.  Defendants argue that Dr. Booeshaghi's testimony is unreliable because (i) his "conclusions and opinions directed to the PRHTA and its inspector are unsupported" and (ii) his "conclusions and opinions as to the improper

---

[3]      Defendants divide their argument into three sections: 1) "The Testimony of Plaintiffs' Expert Should Be Excluded," 2) "Dr. Booeshaghi's Testimony Lacks a Reliable Foundation," and 3) "Dr. Booeshaghi's Testimony is Irrelevant and Unfairly Prejudicial."  Because the first two arguments are substantially similar, the Court considers them together.

implementation of the MOT are unsupported and unreliable." *Id.* Defendants specifically object to the following opinions made by Dr. Booeshaghi in his report:

> 16. The inspector of the roadway project failed to recognize the deficiencies of the roadway construction MOT;
> 17. Drivers were confused by the existing signage and roadway layout as indicated by the June 21, 2017 MOT Report (2 days before accident);
> 26. Because of the improper MOT, Noemi Suliveres was not aware that the area where she stopped on the Shoulder Lane was a designated lane of travel due to the construction;
> 27. But for the improper MOT on PR 52, Noemi Figueroa Suliveres would not have mistaken the Shoulder Lane as a non-travel lane and she would not have stopped her Mercedes in the Shoulder Lane where it was struck by ARB garbage truck.

*Id.* at 4-8 (quoting *Booeshaghi Report* at 54-55). Defendants further contend that because the testimony lacks any foundation, it does not assist the jury in any way and should therefore be excluded on relevancy grounds.

### B.   Plaintiffs' Response

Plaintiffs reject Defendants' arguments, asserting that Dr. Booeshaghi's report is both reliable and relevant, and any objections "go to the weight of the evidence and not to the admissibility of the opinions." *Pls.' Opp'n* at 2-6. Plaintiffs cite specific findings in Dr. Booeshaghi's report to show support for his conclusions and attach to their response "over 400 slides of evidence and explanations that support and further explain [Dr. Booeshaghi's] opinions." *Id.* at 2; *see Pls.' Opp'n*, Attachs. 2-4. Plaintiffs assert Dr. Booeshaghi's methodology is "accepted by the community, has logic and is sound" and argue that Defendants "ha[ve] not cited any expert articles or any experts that challenge the methodology." *Id.* at 2-3.

### C.    Plaintiffs' Supplemental Response

In a supplemental response, Plaintiffs draw the Court's attention to a recent First Circuit case, *Lawes v. CSA Architects and Engineers LLP*, 963 F.3d 72 (1st Cir. 2020), to counter Defendants' claim that "Dr. Booeshaghi did not use a methodology accepted by the scientific community to reach his opinions, making them unreliable." *Pls.' Suppl. Opp'n* at 1.  Plaintiffs argue that the expert in *Lawes* was a traffic safety expert who used a methodology "similar—if not identical—to the one used by Dr. Booeshaghi here." *Id.* at 2.  Plaintiffs again contend that Defendants' arguments "go to the weight of the evidence, not to their admissibility." *Id.* at 4.

### D.    Defendants' Reply

Acknowledging that the issues in *Lawes* are "similar (but not identical)" to this case, Defendants reject Plaintiffs' interpretation of *Lawes*, arguing that not only should that case be distinguished from this case, but "the *Lawes*' decision serves to actually strengthen the allegations set forth" in the Defendants' motion in limine. *Defs.' Reply* at 1-2.  Defendants contend that "[t]he *Lawes*' case is basically the result of (i) an expert amending its expert findings throughout the discovery process, . . . (ii) he never does so in writing, and (iii) at some point another party claims foul, or as it happened in that case, surprise and/or trial by ambush." *Id.* at 3.  While the *Lawes* court found that the traffic safety expert's opinions "although not bulletproof . . . were sufficiently reliable to present to a jury," *Lawes*, 964 F.3d at 99, Defendants argue Dr. Booeshaghi's testimony lacks foundation because Plaintiffs "never deposed the inspector of the roadway construction MOT (or anyone affiliated with the PRHTA nor

the project manager from Del Valle Group)" and Dr. Booeshaghi "never interviewed

co-plaintiff Ms. Figueroa." *Defs.' Reply* at 5.

## III.   LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if: (a) the expert's scientific, technical, or
> other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the
> testimony is based on sufficient facts or data; (c) the testimony is
> the product of reliable principles and methods; and (d) the expert
> has reliably applied the principles and methods to the facts of the
> case.

FED. R. EVID. 702. "To give an expert opinion, a witness must be 'qualified'[4] by

'knowledge, skill, experience, training, or education' to do so, and the judge must vet

the opinion to ensure it's 'reliable.'" *United States v. Montijo-Maysonet*, No. 18-1640,

2020 U.S. App. LEXIS 27803, at *24-25 (1st Cir. Sept. 1, 2020). More specifically, in

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme

Court designated trial judges as gatekeepers responsible for determining whether

Rule 702's requirements are met in any given case. *Id.* at 597. A judge exercising

the gatekeeper role must "ensure that an expert's testimony 'both rests on a reliable

foundation and is relevant to the task at hand.'" *United States v. Vargas*, 471 F.3d

255, 261 (1st Cir. 2006) (quoting *Daubert*, 509 U.S. at 597); *see also Kumho Tire Co.,*

*Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (extending *Daubert* to technical and

---

[4]     Rule 702's first phrase requires that the proffered expert be qualified to testify about the things
for which the expert is being proffered to testify. The Defendants have not challenged Dr. Booeshaghi's
qualifications as a forensic engineer and the Court has not addressed this issue.

other specialized expert testimony).  The inquiry under Rule 702 is a "flexible one." *Vargas*, 471 F.3d at 261 (quoting *Daubert*, 509 U.S. at 594).  The Court possesses broad discretion to determine whether proffered expert testimony meets *Daubert*'s requirements for admissibility.  *Id.*; *see Carballo Rodriguez v. Clark Equip. Co.*, 147 F. Supp. 2d 81, 83 (D.P.R. 2001) ("When assessing the reliability of technical or specialized expert testimony, as opposed to scientific testimony, the trial judge exercises 'broad latitude' both in how it determines the reliability of the testimony, and in the ultimate reliability determination") (citing *Kumho Tire Co.*, 526 U.S. at 149).  The proponent of the expert testimony, in this case the Plaintiffs, must establish admissibility by a preponderance of the evidence.  *Bourjaily v. United States*, 483 U.S. 171, 176 (1987); *see* FED. R. EVID. 702 advisory committee's note to 2000 amendment ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a).  Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence").

## IV.  *Lawes v. CSA Architects and Engineers LLP*

On June 18, 2020, the First Circuit handed down *Lawes v. CSA Architects and Engineers*—an important case concerning the admissibility of expert testimony in circumstances remarkably similar to the instant case.[5]  Like this case, *Lawes*

---

[5]    In *Lawes*, the First Circuit extensively discussed whether the plaintiff in that case complied with discovery obligations.  963 F.3d at 90-97.  In this case, however, the Defendants have not claimed that the Plaintiffs committed any discovery violations and therefore the Court concentrates on the First Circuit's Rule 702 discussion in *Lawes*, not its teaching on the proper handling of asserted discovery violations.

involved an accident at a construction site and whether an engineering expert hired by the plaintiff should have been allowed to testify before a jury.  963 F.3d at 76-78.  The district court refused to allow the expert testimony and when the plaintiff's case collapsed, the judge dismissed the complaint mid-trial.  *Id.*  The plaintiff appealed the dismissal and the First Circuit concluded that the district court abused its discretion in excluding the expert testimony, vacated the dismissal, and remanded the case to the district court.  *Id.* at 109.

Turning to Rule 702, the First Circuit reviewed the substantive law of Puerto Rico, noting that the district court's jurisdiction was based, like this case, on diversity of citizenship.  *Id.* at 89.  According to the First Circuit, under Puerto Rico substantive law, expert testimony is required in a negligent design case, except in an "exceptional case" where the "negligence in design [is] blatant enough not to require expert testimony[.]" *Id.* (quoting *Vázquez-Filippetti v. Banco Popular de Puerto Rico*, 504 F.3d 43, 52 (1st Cir. 2007)).  The *Lawes* Court did not reach whether the negligent design theory required expert testimony because it concluded that the district court erred in excluding the proffered expert testimony.  *Id.*

The First Circuit extensively addressed whether the trial court should have allowed the plaintiff's expert to testify.  *Id.* at 97-109.  To answer this question, the *Lawes* Court analyzed the sufficiency of the data upon which the expert relied, the expert's methodology and the application of his methodology to the facts in the case. *Id.*  After engaging in a detailed discussion, the First Circuit concluded that the

district judge "crossed the boundary between gatekeeper and trier of fact." *Id.* at 109 (quoting *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 22 (1st Cir. 2011)).

## V.    DISCUSSION

### A.    Unreliable and Unsupported Application of the Facts

Defendants' main contention is that Dr. Booeshaghi's expert testimony and report are unreliable, improper, and based on unsupported assumptions because "experts cannot base their opinions on speculation or conjecture, unproven facts, insufficient data, or on facts that are contrary to the evidence and/or ignore the evidence." *Defs.' Mot.* at 2.

### 1.    Dr. Booeshaghi's Conclusions and Opinions Directed to the PRHTA

Defendants first argue that Dr. Booeshaghi's conclusions and opinions directed to the PRHTA and its inspectors are unsupported because Plaintiffs did not depose any witness from PRHTA and Dr. Booeshaghi relies "only as to the fact that the incident occurred to support his findings." *Defs.' Mot.* at 4-5 ("The Parties to this action have conducted numerous depositions and extensive documentary discovery, yet the opinion above is not based on the facts that have been obtained during discovery.  Therefore, the opinion expressed above is based on pure speculation, conjecture, and the improper *ipse dixit* of Plaintiffs' proposed expert, and should be precluded as a matter of law").  *Id.*  Accordingly, the Defendants argue his conclusion that the PRHTA inspectors "failed to recognize the deficiencies of the roadway construction MOT" is unreliable.  *Id.*

The Court is not convinced.  The Defendants cite no caselaw and the Court is aware of none that stands for the proposition that an expert may rely only on information obtained by deposition or only through formal discovery.[6]  Moreover, Dr. Booeshaghi is not being offered as a percipient witness.  He did not observe the accident and, in formulating his expert opinions, he must rely on what others have said about the event.  It will, of course, be up to the Plaintiffs to place sufficient evidence before the jury to provide the foundation for Dr. Booeshaghi's expert opinions.

Nor does the Court view Dr. Booeshaghi's statement about the PRHTA inspectors' failure to recognize deficiencies as a speculative assertion of fact but as an expression of expert opinion, based on a permissible inference, namely that the PRHTA inspectors must have failed to recognize the design deficiencies because the deficiencies were glaring enough that a competent inspector would have been aware of and corrected them.  *See RTR Techs., Inc. v. Helming*, 707 F.3d 84, 93 (1st Cir. 2013) ("[E]xpert testimony may be more inferential than that of fact witnesses," but "an expert opinion must be more than a conclusory assertion about ultimate legal issues") (quoting *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993));

---

[6]     To the extent Defendants argue that Dr. Booeshaghi's opinion is unreliable because "there is no admissible evidence on the record to support" his conclusions, *Defs.' Mot.* at 4, the evidence an expert relies on need not be admissible.  *See U.S. v. Perocier*, 269 F.R.D. 103, 108 (D.P.R. 2009) ("An expert may rely on facts or data that have not been admitted into evidence if the expert's reliance is reasonable 'as measured against the facts on which experts in the particular field normally rely'") (citing *Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Int'l Inc.*, 851 F.2d 540, 544 (1st Cir. 1988)); FED. R. EVID. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted").

*Official Comm. of Unsecured Creditors v. Calpers Corp. Partners, LLC*, 1:18-cv-68-NT, 2020 U.S. Dist. LEXIS 125769, at \*14 (D. Me. July 17, 2020).

This Court's opinion is guided by the First Circuit's decision in *Lawes*. In *Lawes*, the First Circuit concluded that "the district court exercised its gatekeeping role under *Daubert* with too much vigor." *Lawes*, 963 F.3d at 99 (quoting *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013)). As with the Defendants here, the defendants in *Lawes* contended the testimony of an expert in "traffic accident reconstruction, traffic engineering design, work-zone traffic control evaluation, and pedestrian safety" was unreliable. *Id.* at 79. The First Circuit disagreed. The *Lawes* Court found that the expert's methodology was:

> relatively straightforward: (1) he conducted an investigation into the conditions in place on the night of Lawes' accident, including by visiting the scene on two occasions, reviewing the police accident report, developing a computer animation of the accident, and reviewing photos, testimony, the MOT and underlying documents, and other sources; and (2) he applied the relevant sections of the MUTCD (and other standards) to the facts ascertained from his investigation to determine what conditions should have been in place to protect pedestrians from injury.

*Id.* at 102. The First Circuit went on to state that the expert "opined that his methodology was generally accepted in the field of traffic engineering, which hails the MUTCD [Manual on Uniform Traffic Control Devices] as the 'Bible'" and found that defendant's expert applied a similar methodology. *Id.*

Noting that "district courts must not 'unduly scrutinize[] the quality of the expert's data,' because such scrutiny 'usurps the role of the jury,'" *id.* at 99 (quoting *Manpower, Inc.*, 732 F.3d at 806), the First Circuit concluded that the expert's data was sufficient. The expert in *Lawes* considered the MUTCD, the complete MOT,

hundreds of pages of deposition testimony, and other data. *Id.* at 101. "Taken as a whole, these documents provide[d] sufficient data from which [the expert] could reliably opine about the parties' respective obligations to keep the area safe for pedestrians." *Id.* While defendants pointed out sources that the expert did not use, the *Lawes* Court found that "the district court placed undue weight on the sources [the expert] did not consider, which were readily available to [the expert] as part of the data he did consider." *Id.* at 102. Put simply, Rule 702 "does not demand that an expert rely on all information that could be deemed relevant." *Id.* at 101. Moreover, the expert was not required to "seek out the best possible source of relevant information." *Id.* Even if relying on other evidence would have made the expert's testimony stronger, "'that was a matter affecting the weight and credibility of [his] testimony,' not its admissibility." *Id.* at 102 (quoting *Payton v. Abbott Labs*, 780 F.2d 147, 156 (1st Cir. 1985)).

The case at hand is remarkably similar. Dr. Booeshaghi too is an accident reconstruction and traffic safety expert. Dr. Booeshaghi's methodology is nearly identical to the expert in *Lawes* and involves applying the MUTCD to the facts in the record. Like the *Lawes* Court, this Court is not convinced by Defendants' attempts to point out factual sources that Dr. Booeshaghi failed to consider. As the record contains some foundational evidence that the deficiencies existed, even if the inspectors had been deposed and had denied the existence of the deficiencies, the seriousness of any acknowledged deficiencies, or the relationship between the deficiencies and the accident, their denials would not foreclose the factual issues from

being presented to a jury.  A jury, hearing evidence of the deficiencies, Dr. Booeshaghi's opinions, and the inspectors' explanations, could disbelieve the inspectors in favor of Dr. Booeshaghi's inferences or vice versa.  Thus, whether Dr. Booeshaghi's opinion on this issue carries the day depends on whether the factfinders, hearing all the foundational evidence, find Dr. Booeshaghi's conclusions convincing, and whether the jury draws the same inference about the PRHTA inspectors' failures to act in response to whatever deficiencies the jury finds the Plaintiffs have proven.

Naturally, the Defendants do not have to meekly accept Dr. Booeshaghi's opinions and are free to challenge the facts upon which his opinions are based or to present countervailing lay testimony and expert opinions.  For example, they may call as witnesses the PRHTA inspectors and others, including engineering experts, and their witnesses may explain that Dr. Booeshaghi's alleged deficiencies did not exist, that they were not deficiencies at all, that the identified deficiencies were minor and did not require correction, and that the deficiencies did not cause the accident. But the Defendants may not exclude Dr. Booeshaghi by claiming by motion in limine that the Plaintiffs cannot prove the contested facts underlying his opinion.

It is true that in an extreme case, where the expert relies on purely fanciful and unsubstantiated facts, a district court may step in and prevent the expert testimony.  *Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co.*, 295 F.3d 68, 81-82 (1st Cir. 2002); *Irvine v. Murad Skin Research Labs.*, 194 F.3d 313, 321 (1st Cir. 1999) ("Absent adequate factual data to support the expert's conclusions his testimony was

unreliable"); *Wallace Motor Sales, Inc. v. American Motor Sales Corp.*, 780 F.2d 1049, 1062 (1st Cir. 1985) ("[T]here is a distinction between proof which allows the jury to make a 'just and reasonable inference' of damages and proof which only provides a basis for 'pure speculation or guesswork'") (quoting *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946)); *see also Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996) ("Admission of expert testimony based on speculative assumptions is an abuse of discretion"); *Whitney v. Wal-Mart Stores, Inc.*, Docket No. 03-65-P-H, 2003 U.S. Dist. LEXIS 22629 (D. Me. Dec. 16, 2003).

But, as in *Lawes*, the First Circuit and the federal district courts in Puerto Rico have repeatedly cautioned that "courts must not 'unduly scrutinize[] the quality of the expert's data,' because such scrutiny 'usurps the role of the jury.'" *Lawes*, 963 F.3d at 99 (quoting *Manpower, Inc.*, 732 F.3d at 806); *see Payton*, 780 F.2d at 156 ("If the factual underpinnings of [the experts'] opinions [are] in fact weak, that [is] a matter affecting the weight and credibility of their testimony"); *Campos v. Safety-Kleen Systems, Inc.*, 98 F. Supp. 3d 372, 380 (D.P.R. 2015) (finding defendants' arguments go to the "weight and credibility" of expert's testimony and thus "are more properly suited for cross-examination and presentation of contrary evidence"); *Echevarria v. Caribbean Aviation Maint. Corp.*, 841 F. Supp. 2d 565 (D.P.R. 2012) (finding defendants' arguments that expert's testimony is "based on unsupported speculation as it lacks a reliable evidentiary foundation" "go to the weight of the testimony and not the admissibility requirement of Rule 702"). This is even more true here, where the gravamen of the Defendants' argument is not that the Plaintiffs could not prove

the asserted facts but that the Plaintiffs failed to depose witnesses with potential personal knowledge or otherwise formally discover their knowledge of the disputed events.

In his report, Dr. Booeshaghi lists the materials he reviewed and considered, which consisted of personal inspection of the vehicles and accident scene as well as review of depositions, medical records, photographs, pleadings, recorded conversations, reports, statements, videos, and technical information. *Booeshaghi Report* at 1-4. Plaintiffs additionally attached more than four hundred slides explaining his findings to their opposition motion. *See Pls.' Opp'n*, Attachs. 2-4. These materials are similar to those relied on by the *Lawes* expert and Dr. Booeshaghi's opinions drawn from these facts are not "pure speculation, conjecture, [or] improper ipse dixit." *Defs.' Mot.* at 5. As in *Lawes*, the Court concludes that Defendants' reliability argument goes more to the data relied upon than to the reliability of the scientific methodology, and thus affects the weight and credibility of Dr. Booeshaghi's testimony, not its admissibility.[7]

### 2.    Dr. Booeshaghi's Conclusions and Opinions as to the Improper Implementation of the MOT

Defendants next argue that Dr. Booeshaghi's opinions as to the improper implementation of the MOT are unsupported and unreliable. *Defs.' Mot.* at 5.

---

[7]    The one opinion Dr. Booeshaghi expresses that skirts the edge of proper expert testimony is what Ms. Figueroa Suliveres would have done if PRHTA had properly implemented the MOT, namely that she would not have stopped where she stopped. The Court views this opinion not as Dr. Booeshaghi speaking for Ms. Figueroa Suliveres but opining as an engineer that the purpose of a properly implemented MOT is to alert drivers, including Ms. Figueroa Suliveres, that they should not stop on the shoulder because it had become a travel lane, and, when properly notified, drivers, including Ms. Figueroa Suliveres, heed the notices. Properly phrased and purposefully limited, Dr. Booeshaghi's opinion on this issue is admissible.

Defendants contend these conclusions are unreliable because they are based on Dr. Booeshaghi's own interpretation of:

> (i) issues arising from two days prior to the accident, which makes it irrelevant for this case (ii) there is no evidence set forth that he spoke with ALL the drivers that [w]ere travelling in the area (and no information is set forth about any additional accidents occurring) and (iii) most importantly, there is NO indication or admissible evidence that the drivers involved in the accident (co-defendant Mr. Estrella and Mrs. Figueroa) [w]ere 'confused' by the construction nor Mrs. Figueroa mistook the use of the emergency lane as a non-travel lane.

*Id.* at 6 (capitalization in original).

For the same reasons the Court rejects Defendants' objections to Dr. Booeshaghi's PRHTA conclusions, the Court concludes that Dr. Booeshaghi's opinions on the implementation of the MOT are best tested not by exclusion but by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . .." *Daubert*, 509 U.S. at 596. Defendants do not argue that Dr. Booeshaghi's methodology is flawed, but rather the evidence he relies on is insufficient. However, as the Court noted earlier, contrary to the Defendants' contentions, the First Circuit has never held that Rule 702 requires that "experts rely on all data that could be deemed relevant. It does not even require the expert to seek out the best possible source of relevant information." *Lawes*, 963 F.3d at 101. The Court concludes that Dr. Booeshaghi reviewed a sufficient record of facts, used an accepted methodology, and applied his technical expertise to draw his opinions. As

in *Lawes*, the Court finds this is legally sufficient to survive Defendants' motion in limine.[8]

### B.    Irrelevant and Unfairly Prejudicial

Defendants next argue that in addition to its unreliability, Dr. Booeshaghi's testimony is irrelevant and unfairly prejudicial because it would mislead the jury. *Defs.' Mot.* at 8-9.  They argue that his testimony is the "prototypical example" of excludable expert testimony because "it does not assist the jury in any way, but simply is intended to lead them to believe that a product is defective just because an expert says so." *Id.* at 9.

Expert opinions are admissible if they are "relevant not only in the sense that all evidence must be relevant [pursuant to Federal Rule of Evidence 402], but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Ruiz-Troche*, 161 F.3d at 81; *see* FED. R. EVID. 702.  The "fundamental question" a court must decide is "[w]hether the untrained layman would be qualified to determine intelligently and to

---

[8]      For support, Defendants quote *Whitney v. Wal-Mart Stores, Inc.*, No. 03-65-P-H, 2003 U.S. Dist. LEXIS 22629 (D. Me. Dec. 16, 2003): "Expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith. . .." *Def.'s Mot.* at 7, n.12.
          The full sentence from *Whitney* reads:

> **Although** expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith **or to be in essence an apples and oranges comparison, other contentions that the assumptions[] are unfounded go to the weight, not the admissibility, of the testimony**.

*Whitney*, U.S. Dist. LEXIS 22629, at *11 (quoting *Boucher*, 73 F.3d at 21) (emphasis added).  As in *Whitney*, the Court concludes that "[o]n the showing made, [Dr. Booeshaghi's] proposed testimony is sufficiently grounded." *Id.* at *11-12.

the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved." *United States v. Shay*, 57 F.3d 126, 132 (1st Cir. 1995) (quoting *United States v. Montas*, 41 F.3d 775, 783 (1st Cir. 1994)).

The average layperson is not an expert in civil engineering and does not know the standards for a properly implemented MOT in a roadway construction zone or the effects on drivers of an improperly implemented MOT.  Here, the Court concludes that Dr. Booeshaghi's testimony will help a jury determine the critical issues of breach of duty and causation in Plaintiffs' negligence action against Defendants.  Thus, his designated testimony meets Rule 702's special relevancy standard.

Defendants further argue that Dr. Booeshaghi's testimony is unfairly prejudicial under Federal Rule of Evidence 403 because it would mislead the jury. Under this Rule, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . .." *Daubert*, 509 U.S. at 595; *see* FED. R. EVID. 403.

As previously stated, the Court concludes that Dr. Booeshaghi's opinions have special relevance because they "likely would assist the trier of fact to understand . . . a fact in issue" related to the liability and causation issues.  *See First Marblehead Corp. v. House*, 541 F.3d 36, 42 (1st Cir. 2008); *Ruiz-Troche*, 161 F.3d at 81. Therefore, Defendants' concerns about Dr. Booeshaghi's opinions misleading the jury are outweighed by the relevance of his testimony to crucial legal issues and are safeguarded by Defendants' ability to engage in "vigorous cross-examination, [the]

present[ation of] contrary evidence, and . . . careful instructions on the burden of proof." *Daubert*, 509 U.S. at 596; FED. R. EVID. 403.

## VI.  CONCLUSION

The Court DENIES the Defendants' Motion to Exclude Dr. Farhad Booeshaghi (ECF No. 86).[9]

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of September, 2020

---

[9] On July 9, 2020, the Plaintiffs filed a document entitled supplemental motion to brief the impact of *Lawes* on the Court's ruling on the pending motion in limine. *Pls.' Suppl. Opp'n*. The Plaintiffs intended their filing to be only a memorandum supplementing their earlier opposition to the Defendants' motion in limine, but as they entitled their opposition as a supplemental motion, not memorandum, the Clerk's Office categorized the filing as a motion. As the Plaintiffs' supplemental opposition is merely a supplemental memorandum, not a motion and the Court resolves the issue presented in the supplemental motion by ruling on the motion in limine, the Court DISMISSES as moot the Plaintiffs' *Supplemental Motion in Opposition to Motion in Limine to Exclude Testimony of Plaintiffs' Expert Dr. Farhad Booeshaghi (Docket #86)* (ECF No. 107).